Next this morning in Case 11-1018-9, Trevino v. Thaler. Mr. Wolf. Mr. Chief Justice, may it please the Court. The Texas Court of Criminal Appeals has said repeatedly, quote, as a general rule, a defendant should not raise an issue of ineffective assistance of counsel on direct appeal, and has recognized the Texas procedure make it, quote, virtually impossible for appellate counsel to adequately present such a claim. Those claims are the choices made by the sovereign State of Texas. And it renders this case just like Martinez. This case well illustrates the consequences of that choice. The transcript in this case was not ready, available for 7 months. That's 4-1⁄2 months after the trial lost the trial court, lost jurisdiction on any new trial motion. The State itself argued, quote, in Sprouse, without access to that record, new counsel would have little basis for attacking performance of trial counsel. Suppose the State's position were not, as you accurately have stated, the Texas Court of Criminal Appeal. It didn't say collateral review is the preferred route. It said either way will do. You can bring it up on direct appeal or you can bring it up on collateral. Would you say that Martinez applies in that situation, or does it depend on having the State's highest court in the matter saying this is the preferred way to go? Texas systematically channels ineffective assistance claims to collateral to State habeas. And if it didn't, if it just said you can bring it up on direct, but we realize these limitations because the transcript won't be ready, so you can wait and bring it up on habeas, I'm just asking how far the rule that you would like us to adopt, you say this is just like Martinez, is that where you would draw the line, that the State's highest court has to say we prefer this matter to be brought up on collateral review? It's not just them saying it in words, but it's also saying it in the legislation and in the rules that the State of Texas has adopted. In order to expand the record in a Wiggins claim, which is what's the basis of Mr. Wiggins' claim, it takes a 30-day window to file a motion for new trial and 75 days, 75 days to have a hearing on it or else the court loses jurisdiction by operation of law. The district court, the trial court. That's correct. And so you couldn't expand the record. And in order to present Wiggins' claim especially, it takes a considerable amount of extra record investigation. Has the Texas of the Texas appellate courts ever sent a claim back for an evidentiary hearing? After 75 days, the district court loses jurisdiction. And I realize there are some jurisdictions around the country that have that opportunity. But Texas has a finality where there is no provision to expand the record after that 75-day period. So as far as you know, the court, the appellate court has never done that? That's correct. Okay. Why does Texas afford people in your client's position a new appellate counsel? Well, there's two can actually, Texas has a dual-track system. It was developed in 1995, a year before the Federal system was developed in AEDPA. And the concept and the reason for it, the rationale, was to expedite these type of claims, especially in death penalty claims under Section 11.071. But the real – and the purpose is that there's two counsels that are appointed. One counsel is appointed to handle the record-based claims, and that's done on direct appeal. The other counsel is appointed in all cases, there's no question, on habeas. And that attorney, that counsel, is appointed with the understanding that he's going to have the time to do the extra record-based claims. In a case like this, the record wasn't even prepared for 7 months after the date of the judgment. Counsel, I don't know that you've answered Justice Ginsburg's question, and so I'm going to take it up, because it interests me. Sotomayor, let's assume, as she did in her hypothetical, that a State says – doesn't have any case law like Texas does that says we prefer you to go that way for non-record-based claims. Is the difference between that hypothetical State that says you can do either and the Texas situation is that Texas, in your mind, puts up procedural impediments to using the direct appeal mechanism, and so that if the other State hasn't done that, has made the development of evidence, has provided a full opportunity for you to develop a record before the direct appeal is over with, that State wouldn't be subject to Martinez, and Texas is subject to it only because it has the procedural impediments? That's correct, because the scheme that Texas has developed channels, systematically channels, the habeas claim, the IAC claim, the ineffective assistance claim into habeas. There is no – to say that it could be done is really an illusion. Kennedy, how do you want us to formulate the rule if we write the opinion in your favor? If a State does not give a realistic opportunity, a feasible means for expanding the record on direct review, then Martinez applies, because it is the collateral proceeding that is the meaningful one, and then we go through 50 States to see if that rule applies? Well, it wouldn't really affect 50 States, because some States provide a mechanism for an abatement to go back on direct appeal and expand the record. Other States require that it go to direct appeal. And each – and those States have made a choice, and Texas has made a choice by developing this scheme. And as far as the other States, they would have to compare themselves to the situation that we would have – that would come out of this. Well, I have the same question that my colleagues have asked. Could you give us in a sentence or two the test that you would like us to apply? Where a State does not, like Arizona, prohibit the raising of this issue on direct appeal, Martinez nevertheless applies where the State does blank. Fill in the blank. When it makes it impracticable in the vast majority of cases to raise the claim on direct appeal. Impracticable in the vast majority of cases. Now, that really would require a case-by-case determination in every other State. It doesn't fall within the Martinez category, wouldn't it? Well, not necessarily. No? Justice Alito. Because there's – some States require that their cases are directed back to direct appeal, and there's a mechanism to expand the record. There are some that require it to go to direct appeal. But in Texas, what we have is a limitation that's the rules that the Texas Supreme Court has devised with the Texas. Well, I understand that. But so the State says you have to raise this on direct appeal, but you have to comply with our time limits on direct appeal. And they don't appoint – you know, you don't get a new attorney on direct appeal. It's the same attorney who represented you at trial. So that attorney is in the position of arguing that he or she was ineffective at trial, and that would be okay? If the – let me make sure I understand your question. You have to raise it on direct appeal, or it's lost. You can't wait until collateral, until the collateral proceeding. And by the way, you don't get a new attorney. You get the same attorney that represented you at trial. Would that be all right? No, because the new – the old attorney, the trial attorney, is in the worst, really, position to understand his ineffectiveness. There's a disincentive. All right. So you have the same system where you get a new attorney, but you have to comply with the time limits. And you say, well, I can't do all of this social background research that Wiggins requires within the time limits. So that's impracticable. Is that State okay? No, because that's not okay either. Because that State is – in the Texas scheme, in the Texas scheme, the Texas gives another attorney in this dual track, this system, and it's understood that that attorney is the habeas attorney, and he doesn't have that time limitation that the direct appeal attorney has, that 75 minutes. It's your point that he has to have one full and fair opportunity to make the Wiggins claim, and it doesn't matter whether it's direct or collateral. I think you mentioned that at least one State requires you to do it on direct, but does provide for developing the record. But the bottom line in our situation in Texas is that we have a scheme, we have a set of laws and rules that channel these type of claims. Ginsburg. What are the rules other than the Texas Court of Criminal Appeals having said in several decisions the preferred route is collateral review? Well, first of all, the rule 20 – the rules of appellate procedure 21.8 talk about the limitations of the number of days that you have to expand the record in a motion for neutrality. Seventy-five days, the district court loses jurisdiction. They cannot hear anything else on this case. The record in this case wasn't even available for 7 months after the date of the trial. So even with a new attorney that's appointed, first of all, that new attorney is a stranger to the case. He doesn't know anything about the case. He's not in a position to talk to the client. The client is not the best person to understand rules of appellate procedure. So he's got to wait on that trial record, first of all, to see what's there. Kennedy. I'm not sure exactly what Justice Ginsburg's formulation was, but I don't understand why you didn't say, oh, yes, that's right. There has to be one full, fair opportunity to raise the issue, and that's what we're arguing here. I'm sorry if I missed that, but that's exactly the point, and that's what I'm saying. Kennedy. My question is, does this apply just to capital cases? Could we in a principle office? So this doesn't apply just to capital cases? Not necessarily. But in the capital arena in Texas, we have the dual-track system where you get an attorney appointed automatically in a habeas setting, where in a non-death-penalty  arena, there is a systematic channeling by the State, referring these type of claims into habeas, while the State attorney, the district appeals attorney, focuses on the record-based claims and the non-death-penalty claims, while the district  appeals attorney is dealing with the record-based claims, and the habeas attorney is dealing with all of the case, not just the trial, but the appeal, to make sure that there was no ineffectiveness on his part, and also to do the investigation on the extra-record-based claims, which takes a substantial amount of time. Sotomayor, you started to answer this question, but it is something raised by many of the amici opposing your position, which is that by adopting your position, we are essentially having to examine the 49-plus, because we have territories that have collateral and direct review as well, plus systems to see which apply to which Martinez applies and which to which Martinez doesn't apply. And so the question is, how do we write this to sort of give enough guidance so that we are not examining each of the 49 or 49 systems, or maybe 48, after we have decided Martinez? And why should we not fear that outcome? I would suggest the rule to be that Martinez applies when a State channels ineffective assistance of counsel claims to State habeas, and makes it impracticable in the vast majority of cases to raise the claim on direct appeal. And in answer to your question about all of the States, many of the States do make it do make habeas available in the direct appeal arena. The reason why there was a movement to channel ineffective assistance of counsel claims to collateral review is that it is often, maybe in the great majority of cases, impracticable to adjudicate them on direct appeal. So under your standard, it seems to me that covers every State. Well, it wouldn't, Justice Alito, for this reason. Many States have a mechanism, unlike the Texas scheme, which permits the expansion of the record. Some States, like Utah, who authored the amicus brief, has a Rule 21.3, which permits the claimant to go back and expand the record. We don't have that ability in Texas. Well, your friend says, page 18 of his brief, that you do. He says under Texas Rule of Appellate Procedure 21, direct appeal counsel can supplement the record with evidence developed by investigators and experts, the ones that are appointed and paid for by the State on appeal. Is that just wrong? Yes. Okay. And the reason I say that is, in order to obtain a record, one, you need to, when you file your motion for new trial, you have to specifically set out the factual basis for the claim, and two, the affidavit has to identify the evidence of any further investigation it would have revealed. So you've got that 30-day window when you file that motion for new trial that you have to do all of those things, and that's not enough time. If everything in Texas's system were the same, but you had a year, would that flip Texas into a different category? Is the problem, is what makes this impracticable just the amount of time? Yes. Because the time, the time, especially in a Wiggins claim, is prohibitive in order to be able to prepare, and not just the time there, but the time that is imposed by the rules of appellate procedure. That 75-day window, in order to expand the record, is part of this whole system that it's understood that the habeas claim is, the IAC claim, is channeled into habeas. Alito, let me try this one more time. You seem to say in your brief that the Kansas procedure and the Michigan procedure take those States outside of the Martinez category. Is that correct? Yes. All right. Now, as I understand the procedure in those cases, it is the following. On direct appeal, the attorney can make a motion for a new trial based on ineffective assistance of counsel, and if some threshold is met, the appellate court can remand the case to the trial court for a hearing on ineffective assistance. Is that correct? Yes. Okay. And that would, in most of those cases, the attorney on direct appeal is going to be the attorney who represented the defendant at trial. And it's probably not going to be in a very good position to argue that he or she was ineffective at trial, but that would still be okay. If you don't do that, you've lost it. Well, there's a problem with declaring yourself ineffective. One, it's kind of counterintuitive. In Texas, if you declare yourself ineffective, there's repercussions. You're no longer available to be taken off the list to get appointments on these type of claims. And it's also against the bar rules to have that adverse interest against your client. Well, if that is the system in Kansas and Michigan, then why is it outside Martinez if the point is you can't effectively present the ineffective assistance counsel when you've got the same counsel who is alleged to have been ineffective and is not going to condemn herself? Well, that, as far as their State, you know, other States are concerned, you know, those are problems within those States. But as far as Texas is concerned, you know, we are in a situation that we find ourselves in a Martinez situation where there was no ability to raise the system that we have that prevents you from raising this claim. And as far as the other States are concerned, some of the States have a more liberal opportunity to expand the record, but that's not the system that we have in Texas. And this is where we are. Ginsburg. Explain why the time that you have on direct appeal isn't adequate. So you say you need to investigate, well, some of the things, like school records, these prison records. It doesn't take a long time to get those, does it? Well, it takes a while. I'm not going to say a long while, but releases are required. Sometimes there's opposition to releasing those records. But the biggest part of this whole problem is getting the record, is also in our situation, to have Mr. Trevino evaluated regarding his — there was never a psychological or sociological study done in his case. And to have a psychological eval done, that doesn't happen in 30 days. And one, you've got to get the records. And in some of these situations, one record leads to another record. Finding one witness leads to another witness. And by the time you start developing all these other avenues, and when you put all that together, then you're in a position to present that to an expert in order to make that sort of evaluation. Roberts. Sotomayor, the trial court in Texas, when it gets a new trial motion within 30 days and the new counsel on appeal says, I have reasonably — well, we can see that there is a limit to 30 days or whatever made below, and I would like the time to conduct, you know, the psychological evaluation or to contact these witnesses, is the trial court going to say no? That's correct. Because the 30 days is a limit, it's a bar, that's all he has. And in addition, the direct appeal attorney has his own responsibilities. There's a division of labor that's here that the direct appeal attorney is supposed to review the entire record to look for all of whatever errors that might be there. And while — and that's why in Texas, where you have this dual-track system in order to expedite the appeal, there is a new attorney that's appointed to do the habeas work. Kennedy. Because of the rather sharp disagreements in the briefs and what the actual facts are here, I looked at the brief filed by the State Bar of Texas in support of either party. Can you tell me — and they are critical of having a new counsel work simultaneously on a simultaneous timeframe, concurrently with the new direct appeal counsel. Can you tell me how anything that's said in the Texas bar brief helps your case? Well, it helps our case because it recognizes the dual-track system, and it recognizes that the extra record under section 12.22 of the guide, the Texas guidelines that were formulated that the State Bar was one of their committees on indigent defense helped develop. They recognize the fact that extra record investigation is the responsibility of the habeas counsel. I'd like to reserve the balance of my time. Thank you, counsel. Mr. Oldham. Mr. Chief Justice, and may it please the Court. Texas's procedures for raising ineffectiveness claims are some of the most generous in the country. Those procedures offered Petitioner two bites at the apple. The first bite came in a constitutionally protected direct appeal proceeding. Any deficiency in that proceeding would have been the source of cause under existing cause and prejudice standards to excuse a subsequent default. Allowing the Petitioner to assert cause on the basis of his second bite at the apple, that is, his State habeas proceeding, would create an unwarranted and unworkable extension of Martinez. Why is it the second bite when the Texas Supreme Court, the Court of Criminal Appeals, has said again and again, as a general rule, defendants should not raise ineffective assistance of trial counsel on direct appeal, should raise it on collateral review? Justice Ginsburg, the very next sentence of that opinion, Mata v. State, states that the lack of a clear record usually will prevent the appellant from meeting the first part of the Strickland test, as the reasonableness of counsel's choices and motivations during trial can be proven deficient only through facts that don't normally appear in the appellate record. So the only question presented by those instructions that are quoted over and over again in the Petitioner's briefs is whether and to what extent newly appointed counsel, as Justice Alito was pointing out, Texas provides newly appointed counsel on direct appeal in capital cases, can supplement the appellate record with an explanation from the trial counsel. And where the new counsel gets an explanation of the strategies of the trial counsel, the record is then complete. Ginsburg, I don't, does the statement, defendant should not raise ineffective  assistance? Oh, yes, ma'am. It does mean that. It's just that what the Court is saying, the very next sentence following the ones that are quoted in the Petitioner's brief says the reason that one should not raise an issue of ineffective assistance on counsel in direct appeal is because in cases where there is no explanation from the trial counsel, it will be impossible to adjudicate the first prong of the Strickland test. It doesn't say that as a general rule you should just never do it. It just says if you are actually going to raise a claim of ineffective assistance, you should create the proper record before you do it. And then that, but the comment is that the record has to be done within a very short period of time. And the trial record isn't even available for some of the transcript for some 7 months. Yes, Justice Kennedy. And that is why Texas has a procedure for abating and remanding appeals that is material identical to the one that Kansas provides and that Petitioner concedes is sufficient to satisfy this Court's inquiry in Martinez. So the way that the procedure in Texas would work, as it does in Kansas, is that the newly appointed direct appeal lawyer, who has no conflict and is therefore free to accuse the trial counsel of being ineffective, would file a motion to stay the appeal, abate it, and remand it to the trial court. The showing in both States is roughly the same. It's a facially plausible claim of ineffectiveness. Kennedy, The new counsel on direct waits for 7 months, gets the transcript. In the meantime, let's assume has made some investigation, and he said, and he tells the appellate court, we have some very important material that we want to introduce and we need to supplement the record, please remand this case. Yes, Your Honor, and one point that has never happened in the State of Texas in a capital case, I take it. I'm not aware of a capital case, but it has been done in many, many non-capital cases, and the Court of Criminal Appeals has specifically blessed it, in particularly in a case involving a Wiggins-type ineffective assistance of counsel at punishment phase, and that's a case called Cooks v. State. It's cited on pages 32 and 34. Ginsburg, And the Fifth Circuit was wrong, the circuit that ruled in favor of Texas, but said in the Ibarra case, the Texas Court of Criminal Appeals has made it clear that State habeas petitions, and the State habeas petition is the preferred vehicle for developing ineffective assistance claims. Was that wrong? I believe it just needs to be taken in the context of it is the preferred vehicle if you have not developed the record to bring the claim effective, or to bring the claim appropriately on direct appeal. I'm sorry. Justice Sotomayor. Sotomayor, let me understand what you're suggesting. Counsel doesn't have a record. He or she is newly appointed. Can they go into court and say, I don't know if there's an ineffective assistance of counsel claim, but I need to protect my client and abate this hearing now until I get the trial record, whether it takes 6 months, 7 months, or a year. What will the court do with its rule that requires counsel to provide affidavits setting forth the good faith basis for a claim? Well, Justice Sotomayor, many, many prisoners in Texas in capital and noncapital contexts alike have done that within the 30 days. But I want to emphasize that. How many were given an indefinite stay until they got the trial record to set forth the affidavits? Well, if it's done within the first 30 days, you don't need a stay, indefinite or otherwise. You can just file it. So what do you do with the 75-day rule, which I think is absolute, which says if the court hasn't ruled on the new trial within 75 days, the matter ends? I think the easiest way to think about it is that there are basically three stages. There's the first 30-day window, and as I say, many capital and noncapital prisoners have effectively brought their claims in that 30-day window. Some of them have the information and some don't. That's correct. All right. So that's the first box. But it's certainly not the last. The guys who do it, it's because they have the information and so they've exhausted their claim. But we're talking about the people who don't. So the second box, after the trial, the new trial motion has been denied by an operation of law, you can make effectively a factual proffer of so the trial court no longer has jurisdiction to grant your motion, but you can make a factual proffer of what you would have shown and what you want to show to the court of appeal. Sotomayor That assumes you get the transcript. Well, we're still prior to the transcript, because this is still, this is, so. Oh, the 75 days has passed. And then after that, there's no briefing that has been done in the appellate court at this point, because the appellate briefing schedule and the transcript production are tied to one another. So it would never be a case where you're actually litigating a direct appeal without the transcript. The latter doesn't start until you get the former. And at that point, you can make a motion to stay in abate, to return to the district court, and to supplement the record with evidence of your trial counsel's effectiveness. Even beyond the 75 days? Yes, Your Honor. It effectively restarts the 30-day clock. So the old 75 days is obviously gone, and you get a new 35 days on the stay in abate motion. In that sense, it's materially identical to the procedure that Kansas applies, although, as I mentioned earlier, in capital cases, the State of Texas guarantees its prisoners a new conflict-free lawyer who can help with that proceeding. Breyer So he can do this? I didn't understand this. I'm sorry. Joe Smith is convicted on day one. The transcript appears 9 months later. Okay? 9 months later, his new lawyer, who is supposed to proceed on appeal, reads the transcript. He thinks, hmm, I think there was a problem with his lawyer at the trial, and I would like to raise this claim and get a new trial. And you're saying what he does is he goes back to the trial court and he says, Judge, I just read this. It raises some factual matters. Will you please give me an evidentiary hearing with the old lawyer there and me there so we can develop this? Now, that is how Texas works. Because I did not get that impression from the State bar brief. You're saying that is how it works. Almost exactly, except that you go to the court of appeals and not the trial court. You go to the court of appeals and what do you say? You say, court of appeals, will you please direct the trial court to have an evidentiary hearing on the adequacy of trial counsel before you hear the appeal? Is that yes or no? Yes. Although it's called a new trial motion. Even if you haven't made the new trial motion within the 30 days initially? That's right. This is the Cooks case. Okay. So you're just saying that they're all wrong about how Texas works. So I guess you could refer to a case where that happened. Well, yes, Your Honor. Or what case did that happen? It was called Cooks v. State. Cooks v. State. And they got the transcript months later and they looked back and they said, oh, dear, there was something wrong with trial performance. So we go to the Federal appeals – the State appeals court and we say, State appeals court, please direct an evidentiary hearing. And they directed an evidentiary hearing and they had an evidentiary hearing before the trial judge. Really, what would have happened on State havens? Except they didn't actually get the evidentiary hearing in Cooks because there was no facially plausible showing of the claim that they would have raised. But what would have happened? Now I am puzzled about what I'm supposed to do, because I would have thought that the standard's fairly easy, that this individual must always have one full and fair opportunity to present his claim of inaquatic assistance at trial. There are certain things that could deprive him of that. One, his lawyer in habeas State could be incompetent, all these lawyers could be incompetent. Or the State at a certain stage didn't give him enough proceeding. All right? Well, what do I do where people are disagreeing about how the State procedure works as to whether it was full and fair? What do I do? What's your suggestion? By the way, if he doesn't get the full and fair, he still has to show to the Federal habeas judge that he has a substantial claim that that trial was not. So what do you suggest? Well, Your Honor, where he doesn't get a full and fair opportunity, whether it's because his new lawyer is ineffective, his old lawyer was ineffective, the transcript wasn't available, the very case that we're talking about, the Cooks case, recognizes that that is a violation of the United States Constitution. And you have that prisoner would have a constitutional claim to assert for the failure of his counsel, the failure of the circumstances. All right. Now, but I'm saying what I would like you to sympathize with my problem. My problem is I have seemed, I have a bunch of briefs, and they seem to me that what you have just described as a full and fair procedure to develop all these evidentiary matters before the appeal even takes place exists in Texas, and therefore, unless he could say his lawyer there was incompetent, he's out of luck, okay? The other side seemed to say, no, it doesn't exist in Texas. And now, what am I supposed to do since I am not an expert on Texas procedure? Well, Your Honor, I think you could do one of two things. You could always certify the question to the court of criminal appeals if you thought that the question, that the answer turns on what the Texas procedures are and that the parties disagree of them. I tried that once in a case involving Pennsylvania, and the result was such that I resolved never to do it again. But, but don't say never. All right. So one thing we could do is say never. Alito, that was a case in which the court unwisely reversed a certain Third Circuit decision. Ginsburg. Do we have a clue, Mr. Oldham, if the information is correct, that direct appeal in the county involved here gets a very limited amount of money, gets, they said, it's $1,500 fixed fee, but the counsel who is appointed on collateral review gets $25,000. Doesn't that suggest that the counsel on direct appeal is expected to deal with trial errors, and the one that gets all this $25,000 can go out and find a psychologist or sociologist, whoever is going to give us a profile on this person? No, Your Honor, and that is because the funding thresholds that are cited for the first time in the reply brief are wrong in two respects. One is, those only came into effect after the filing of the State habeas and after the filing of the direct appeal in this case. But the second, and perhaps I think more relevant sense in which they're wrong, is that those apply to the amount of money that are given to the lawyers, whereas the subsection L provision that we've cited in our brief applies to the money for investigators and experts. Its reimbursement for investigators and experts is not the amount of money that is given to the lawyers. Ginsburg. Is it true that it's the county that reimburses the direct appeal counsel and the State reimburses the habeas counsel? Yes, Your Honor, after 1999.  went into effect. Well, but you say it's before, but this indicates how Texas views its system. And as Justice Ginsburg indicated, Texas views the system as being one in which the collateral appeal, the collateral proceeding counsel is in the best position to raise IAC claims. That's just where it is. And the State bar says, agrees with the Respondent on the – pardon me, with the Petitioner on this point. Justice Kennedy, the Court of Criminal Appeals has said that the claims of ineffective assistance of trial counsel properly can be brought on direct appeal. The Texas State legislature has said it by authorizing a new direct appeal attorney and stating throughout the legislative history, and I think in the text and structure of the statute, that they intend for these claims to be able to be brought on direct appeal. They're not channeled either way. Well, it's able to be brought, Mr. Oldham, but as Justice Ginsburg started off by saying, many times the Court of Criminal Appeals has said the preferred mechanism is to bring it on collateral review. And more to the point, even, when attorneys try to bring these kinds of claims on a motion for a new trial, the typical response is to say, no, this is not the proper venue for that. Go back, do it again on collateral review. So we have you say that there's a formal mechanism that could be used, but it seems as though the courts and the lawyers both in Texas are being told continually, don't use that formal mechanism, instead do this on collateral review. Justice Kagan, I'm aware of no case where someone's brought a new trial motion that, in a procedurally proper way, and been told not to do it that way.  But I'm just curious, if you're going to do this without prejudice and to say we don't have time to deal with this, go away, come back again on collateral review. No, Your Honor. That's the usual response when the record is insufficient, that is, when you haven't given your trial lawyer. Well, because mostly the record is insufficient for a Wiggins claim. So any time somebody brings a Wiggins claim on this 30-day window, the Court says, you know, this is only 30 days, the record is insufficient, go away, do it again.  a Wiggins. It's not what happened in the Motley case. That's your one case, it seems to me. You only have one case. It's Armstrong. Armstrong seems to me sort of like proof as to why it is that the Texas courts don't do that generally, because what they did in Armstrong was they ended up trying to adjudicate that on the merits and realizing that there was the record was insufficient. Your Honor, it's not the only case. A similar claim was raised in the Motley case, which is cited in our brief. It was also raised in the Rosales case, also cited in our brief. Similar Wiggins kinds of cases. And in the Motley case, they were able to have school teachers testify. There was a neurological examination done. It's certainly a practical way to do it, and it is as generous or more generous than a lot of the States in the country, including States that the Petitioner concedes are. Sotomayor, do you agree, Mr. Oldham, that if you did not have the mechanism for a new trial, then you would fall under the Martinez rule? With no new trial and no stay in abatement? In other words, no opportunity for factual development. If there was no opportunity to develop the facts and there was practically no opportunity to raise the claim on direct appeal, I think the question would still turn on whether and to what extent there was a constitutional right to have an effective appeal of that issue. And the Texas Court of Criminal Appeals has afforded constitutional protection to that new trial window and to the meaningfulness of the record necessary to raise these claims on direct appeal. And I think that is what is sufficient to move this case out of the Martinez box and into the normal cause and prejudice standards that this Court applies. Sotomayor, can I go back to what you are proposing, okay, and what you are saying this system stands for? If an ineffective assistance of counsel claim is brought on direct appeal, with or without a record, the Court says we don't have a record, it throws it into collateral review, as I have seen it do dozens of times. Are you saying in that situation that Martinez applies? Counsel raised it, but was told we are not going to decide it, puts them into collateral review. Does Martinez apply there? If it happened in every single case and there was no opportunity to do it. Forget it. When it happens. Oh, no, Your Honor. I do not think that Martinez would apply in that circumstance. Okay. So they haven't gotten a full and fair opportunity because they have presented their case, but Texas has said we don't want to do it here, do it there. You are still saying Martinez doesn't apply? Precisely, because there is no default upon which to apply Martinez. So there is nothing, there is no work for Martinez to do in that hypothetical precisely because the claim can't be. So because it can, but Texas chose not to, now there is no protection, there is no full and fair opportunity for the Petitioner to have had that claim adjudicated? That's really the end result of what you are saying. Well, I'm certainly not suggesting that the rule needs to turn on the meaningfulness of the opportunity to raise it on direct appeal. I think that Martinez was very clear when it said, where there is a complete You raised it in the State, said, well, go to collateral review. You are saying no Martinez protection. Well, I don't think there can be. If your counsel is ineffective in habeas in that, in State habeas, you can do nothing about it. Well, you don't, there is nothing to do in the sense that in that very hypothetical, that very claim would be raised, could be raised in State habeas the first time, but it also could be. There is clearly no Martinez protection. The question you are being asked, I think, boils down to whether we should develop a new case, Martinez plus, in which even though there is technically the ability to raise it, which is all that Martinez spoke about, the mere fact that the ability to raise it is not effective enough should produce the same result that Martinez produced. I don't think there is any – I'm not even sure the other side claims that Martinez said what he is arguing here. I think that's exactly right, Justice Scalia. And in the hypothetical that Justice Sotomayor was asking, the Court's ordinary cause and prejudice standards would accommodate for that. There would be no inequity for the Court, for Martinez to do anything. Breyer, imagine that we have a State supreme court, and it says, okay, you could raise this claim on appeal. We don't advise it. We think it's a big – it's so much easier to do it in State habeas. Please do it in State habeas. It's not absolutely binding, but do it, okay? That's what they are saying. Now, he raises nine of his ten ineffective assistance of counsel claims in State habeas. And the State habeas court says, nope, you are out on all nine, but he never raised the ten. Now we are in Federal court, and the prisoner says, you know, that tenth claim is fabulous. And the judge says, it is substantial. And he says, you know why it wasn't raised before? Because my counsel was incompetent on State habeas, and they didn't raise it on appeal because that's just how people normally do things in Texas. They don't raise it on appeal. They wait until State habeas. Has that person had a full and fair opportunity to raise this tenth claim in the State court? Well, if the Court, by hypothesis, is telling the bar not to bring claims under any set of circumstances on direct appeal, I think that that's what they are saying. Breyer, they are not saying never, they are just saying it worked so much better. What they say is we appoint State habeas counsel at the same time, it's easier to develop it, please, we won't say never, we will just say hardly ever. Now, what's the what is the what is your view about whether that person has had a full and fair opportunity to develop his tenth ineffective assistance counsel claim in the State courts? Justice Breyer, Martinez should not apply even to that. I'm not even thinking about Martinez at the moment, because I don't want to get into whether it is an extension or just an elaboration or just a situation covered, but they didn't think of it, or just a lot of other things. I just want to know, given Martinez's, what do you think? I'm not sure how to answer the full and fair opportunity question, because that's not certainly not the standard that we are advocating here. What is the standard you are advocating? We believe that Martinez applies where it said that it applies, and that is where a State makes a deliberate choice to disallow all claims on direct appeal, we understand the necessity to having Martinez cause to apply to an eventual default. But if in fact they say, yes, there is a route never used but once, filled with minefields, very hard when compared with the other one, there you say it isn't Martinez. It is a totally, it is a new thing, because Martinez, after all, had no rationale. I mean, I'm being sarcastic there, but I don't mean to be. I mean, do you see what I'm trying to get at? It was the nose of the camel, is what Martinez was, which is what the dissent said, actually. Yes, dissent said that. This is very amusing in a capital case. Let me ask you this question. Is there anything in the State bar brief that substantially helps your position? I'm very interested in the State bar brief. It was a little hard for me to parse. It did say there's a conflict of interest in, between the habeas counsel and the counsel on direct. And it also indicates that the habeas counsel has to file the application in the convicting court not later than 180 days after, or not later than 45 days after the State's original brief in the direct appeal proceeding is deemed important for the habeas counsel. Just kidding. I don't think there's anything in the State bar brief that helps either side in this sense, because the State bar agrees that there were no relevant guidelines of any kind at the time of any of the proceedings in this case. The only guideline that any bar association promulgated at the time of the direct appeal proceeding or the State habeas proceeding in this case was the 1989 American Bar Association Guideline 11.9.2, which specifically told the direct appeal lawyer in this case to raise every colorable claim he could, regardless of any State procedures to the contrary. And if he had raised a substantial Wiggins claim or if he had even tried his best to raise a Wiggins claim that could be amplified and further developed on State habeas, we wouldn't be standing here today, because it would have been properly exhausted and adjudicated on the merits of the State court. So I don't think that the bar association really has anything, one way to say or the other, which is maybe why it filed on behalf of neither party. But to return to Justice Breyer's question, I don't think that what we're talking about is to come up with anything new. I think what we're talking about in this outside-of-Martinez world is actually very old. We're just talking about the carrier rule, the normal rule that applies to cause and prejudice for all defaults in States across the country. And I think that the best way to understand it is to imagine if in the very hypothetical that you offered, where there was just one person who could get through, that person would have a constitutional claim in the State of the other 900 or however many there were, those people would have constitutional claims in the State of Texas for the deprivation of a meaningful opportunity to press their claims on direct appeal. And that would serve as cause, if the State courts denied it, that would serve as cause to overcome a default in Federal court and to get an adjudication of that claim. Because, Mr. Oldham, I had thought that Martinez was really an equitable rule. It was an equitable rule about giving people an opportunity to raise a trial ineffectiveness claim, and if it's true that although Texas has a technical possibility of doing that outside of collateral review, but in fact that the lawyers are told not to use that route, that the lawyers don't use that route, that if they do use that route, the likelihood is that they'll be thrown out for using that route. The question is why that the formal availability of a mechanism that nobody uses and that everybody is told not to use should matter with respect to the application of an equitable rule like Martinez? Justice Kagan, there is no work for an equitable rule in Martinez to do if you can get there another way. And it's not just that you can raise it on direct appeal. It's also that if your direct appeal lawyer doesn't do it, you can, under certain circumstances, establish a cause against your direct appeal lawyer to overcome an ensuing default. Ginsburg, has there ever been such a case, any case in which a direct appeal counsel has been held ineffective for failing to present a Wiggins claim? I'm not sure about specifically Wiggins claims, but, yes, it is in fact established in the leading treatise on Texas practice cited by both sides that it is ineffective assistance of appellate counsel to fail to develop the record to allow any claim to be adjudicated. But I ask if there is any decision that says you should have raised it on appeal, appeal counsel didn't, relying on the advice of the Texas Court of Criminal Appeals, and therefore, because counsel followed the advice of the Texas Court of Criminal Appeals, she was ineffective. No, Justice Ginsburg, I'm not aware of any particular case on Wiggins in particular. But claims against appellate ineffectiveness for failure to raise a claim on direct appeal are raised and adjudicated on the merits all the time in Texas courts. And there are specific ones that say that it's ineffective assistance of appellate counsel to fail to develop the record using the procedures that the State has allowed through the new trial window. Well, the Texas Court of Criminal Appeals, in addition to saying, as a general rule, bringing it up on collateral review, said, and there's a reason. The reason why is the undeveloped record on direct appeal will be insufficient to establish claims that must be supported by extra-record evidence. So that seems to be an expectation, that extra-record evidence will be developed on collateral review, not direct appeal. No, Justice Ginsburg. I think it's an expectation that the extra-record evidence will be developed, either through the new trial proceeding, through a factual proffer following it, or through a stay-in-abatement procedure to make sure that when the claim actually gets to the court of appeals, that it has a record upon which to adjudicate the claim. That's all. And to the extent that the appellate lawyer fails to do that, it can constitute cause under the ordinary rules of cause and prejudice without creating another Martinez exception, which we would submit is going to be highly, highly unworkable given that the court is going to have to determine when is a little bit enough and when is not enough sufficient for Martinez. Alito, the Respondent says that the Kansas and the Michigan procedures are sufficient to take the case, to take those States outside of Martinez. You say your stay-in-abate proceeding is the same, essentially, as those procedures. His response is that Texas has used this remedy in only one situation, and that is, when a defendant is deprived of counsel during the new trial window and suffers prejudice from the deprivation. Now, is that correct? It's when the counsel at the prisoner has suffered a deprivation of the opportunity to develop the record in the new trial window. So in the Cook's case, for example, there was only a lawyer for 10 of the 30 days, and the court said this, the new trial window is a critical stage for the development of a particular record for raising a Wiggins-style claim on direct appeal, and because that is so. Finish your sentence. Thank you. And because that is so, where there has been a deprivation of counsel in that circumstance that prohibits the development of that meaningful record, we will allow you to go back, assuming you can show prejudice. Thank you, counsel. Mr. Wolf, you have 7 minutes remaining. I want to be very clear about this abatement issue. The abatement issue, as Justice Alito just said, is only available, as referred in our brief on page 6, is only available when there is a denial of the constitutional right to an attorney. And those situations is when there's a delay in appointing the direct appeal attorney after the trial. So during the 30-day window to file the motion for new trial, that time limitation is that clock is running, and if there's no attorney appointed, the constitutional violation, it's considered a critical stage of the trial. And since there's no attorney appointed during those 30 days, that is the only time, as Justice Kennedy is correct in saying, that that is the time that the abatement procedure is permitted. It's the only time. So you're suggesting that if an attorney is appointed within a few days or within a week, as happened here, that in that case there would not be that opportunity, it would be the 30 days, that's it, stop. And when that new attorney, that's correct. And if a new attorney is appointed, because there was no attorney appointed, that new attorney, he himself also has only 30 days. The clock is running. Kennedy, what about the 75 days? I understood that if the 30-day rule had been complied with, within 75 days, you can ask the appellate court to please remand because there is some additional evidence to be determined. That's not correct. And that is not a correct statement of the law. And I would refer the Court to our briefs, to the time that the authorities that we cite, and also the amicus brief from the State Bar in Texas. Roberts. Well, what are the — what are these investigators and experts, they're available to the new appellate counsel, what are they supposed to be doing? To the direct appeal attorney? Yes, the direct appeal attorney. You say that — basically you're saying there's no way they can do anything within these time limits, and yet the State procedure provides for investigators and experts. It seems to me it would be odd for them to provide for people and to pay for people who can't do anything. Well, they don't — to do a Wiggins claim, to do an — they're doing things that would investigate things that came out of the record, because that's what is relegated to the direct appeal. The habeas attorney has more money available and has more time available to do the things, and it becomes a function of time as well. But I want to direct the Court's attention also to the statement in Sprouse. And the State did a statement in the case of Sprouse in our — where were we? It's page 20 of our reply brief, that the position in Sprouse is that there would be no constitutional defect if appellate counsel didn't have time or the record to raise the ineffective assistance claim. And that's because the habeas proceeding is available to develop the claim and is the proper place to do so. And that's the State's brief. It's on page 20 of our reply brief. The other thing that I wanted to bring to the Court's attention is that the Respondent cites a couple of cases that are aberrant, they're aberrations, and they really don't — shouldn't set — this Court has brought out a sensible rule in Martinez, and this Court has said this Court's rules sensibly speak to the ordinary case, not the aberrational. And that's exactly what we have here. The last thing that I wanted to say is that the direct appeal, if there's a choice here that the State has systematically developed a system that has caused, that has directed attorneys on appeal, that the habeas attorney does the extra record claims, the Wiggins-type claims, and that the claims that are raised on the record go to the direct appeal attorney. That is the system that the State has developed. Those are the rules that govern this system that have been promulgated by the Court of Criminal Appeals and the Supreme Court, and that's the system, the scheme that we are under. And because of the — Ginsburg. What about the position of the State that says, Martinez is relatively new, if there is an extension of Martinez to cover this case, then at least give the Texas courts the first crack at deciding whether there was ineffective assistance of counsel, instead of having that done in the Federal courts? We're just looking for the — because of the procedural default scenario that we find ourselves in, we tried to do that. And because 11071 also has — when they — when that was promulgated in 1995, in order to expedite these claims, it provided three things. One, a new attorney. Two, the money to fund those claims. And three, an abuse of the writ, which is Section 5A, which is what we met in our case. The Texas scheme, because of that abuse of the writ, proceeds — causes procedural default, and that puts us in this quandary where a person like Mr. Trevino is unable to get relief because he has an ineffective trial lawyer, and now he is that ineffective trial lawyer. His ineffectiveness is being insulated by the ineffectiveness of his habeas lawyer. And that's not what should happen. It's just not equitable, it's not fair, and Mr. Trevino, someone in his situation, should have a right to complain about the ineffectiveness of his trial lawyer. Thank you, counsel. The case is submitted.